UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sue Peterson,

      Plaintiff,

v.

Dakota County, a municipal
corporation, Minnesota AFSCME
Council No. 14, Local 306,
a Minnesota labor organization,
Patrick Coyne, Carol Duerr, Tina
Isaac, Rick Morrissey, Bridget
Brown and Gerry Proskin, individuals,

      Defendants.

MEMORANDUM OPINION
AND ORDER

Civil No. 04-3149 (MJD/SRN)

_____

John A. Fabian and Adam A. Gillette, Nichols Kaster & Anderson, PLLP for
and on behalf of Plaintiff.

Kathryn M. Keena, Assistant Dakota County Attorney, for and on behalf of
Defendants Dakota County, Patrick Coyne, Carol Duerr, Tina Isaac, and Rick
Morrissey.

Marshall H. Tanik and Teresa J. Ayling, Mansfield, Tanick & Cohen, P.A. for
and on behalf of Defendants Minnesota AFSCME Council No. 14, Local 306 and
Bridget Brown and Gerry Proskin.

_____

This matter is before the Court upon Defendants Minnesota AFSCME

Council No. 14, Local 306 (hereinafter referred to as the "Union"), Bridget Brown

and Gerry Proskin's motion for summary judgment and on the separate motion of

Defendants Dakota County (hereinafter referred to as the "County"), Patrick
Coyne, Carol Duerr, Tina Isaac and Rick Morrissey for summary judgment.

BACKGROUND

In 1981, Plaintiff began working at Dakota County as a family service aide.
She left Dakota County in 1985, but returned in 1987 as a part-time, temporary
emergency adult intake worker.  In 1989, she became a full-time crisis unit social
worker, and from March 2002 until May 2003, Plaintiff was assigned to work in
the County's child and family intake unit.  Plaintiff's duties as an intake worker
included answering phone calls from people having family conflicts, seeking to
place children in foster care, or seeking assistance for the developmentally
disabled or from mandatory reporters about injuries to children.  While in this
position, Plaintiff was supervised by Mary Jo Heieren until March 31, 2003, at
which time Ms. Heieren went on medical leave.

Prior to her transfer to the child and family intake position, Plaintiff was
counseled by her supervisor about her absence from work on Tuesdays. Keena
Affidavit, Ex. 2.  In March 2002, Plaintiff also received a written reprimand
concerning allegations that she verbally harassed a co-worker on two occasions.
Id., Ex. 3. Plaintiff was also placed on administrative leave on March 1, 2002 at
which time she was asked to provide medical verification that she was fit for duty.
Id., Ex. 4. She then received another written reprimand on March 19, 2002

concerning an incident in which she removed her personnel file from the Western Service Center. Id., Ex. 5.

Shortly after she was transferred to the position of intake worker, Plaintiff was verbally reprimanded by her supervisor, Ms. Heieren, concerning a phone call to a client.  Id., Ex. 6, Heieren Dep. 60, Ex. 8.  After Ms. Heieren took medical leave at the end of March 2003, Plaintiff was supervised by Rick Morrissey.[1] Almost immediately, on April 8, 2003, a meeting attended by Tina Isaac, Morrissey, Brian McGlinn, Carol Duerr and Nancy Hobach was held to discuss Plaintiff's job performance.  Id., Ex. 11, Hohbach Dep. at 31, Ex. 13, Bates No. 491. Following this meeting, Plaintiff was notified that she was being placed on administrative leave and sent home.  Id.

On April 11, 2003 Morrissey sent an interoffice memorandum to Isaac which outlined his concerns regarding Plaintiff's job performance.  Id., Ex. 14. These concerns were then put into a memorandum dated April 16, 2003, which was given to Plaintiff and discussed with her at a meeting held that same day. Id., Ex. 16.  Present at this meeting were Isaac, Duerr, Morrissey, Plaintiff and Union representatives Bridget Brown and Gerry Proskin.

---

[1]Morrissey is the County's Social Services Supervisor, who reports to Tina Isaac, the County's Deputy Social Services Director, who in turn reports to Patrick Coyne, the County's Director of Social Services.

Later that same day, Duerr was approached by a crisis unit worker, Pam Korman, who told Duerr of a conversation she had with Sergeant Curt Walter of the West St. Paul Police Department.  Korman told Duerr that Sgt. Walter had mentioned that he had seen Plaintiff at the Dakota County Courthouse on February 28, 2003.  Id., Ex. 9, Duerr Dep. 26-27.  This information evidently raised flags as Plaintiff's intake position did not require her presence at the courthouse at any time.

The next day, Duerr spoke with Sgt. Walter over the phone.  Id. at 28.   Sgt. Walter told Duerr that he was outside of a courtroom waiting to testify in a felony case.  Id. at 33.  With him was another police officer, Stacey Convery.  Sgt. Walter was familiar with Plaintiff, and had specifically warned Convery to call a supervisor if she were ever on a crisis call with Plaintiff.  Id. at 35, Ex. 22 Walter Deposition at 38-40.  Duerr then advised Isaac of her conversation with Sgt. Walter, who advised Duerr to conduct an investigation into the matter.  Id. at 39.

Duerr and Morrissey conducted an investigation into whether Plaintiff was present at the courthouse on February 28, 2003.  This investigation included meeting with Walter and Convery; verifying that the officers were at the courthouse on the day in question; checking the court docket to determine whether there were any references to cases Plaintiff was involved in; speaking with personnel with the Dakota County Attorneys Office; checking Plaintiff's

4

phone logs, and her security card to determine when Plaintiff used to the card to enter her workplace; and reviewing the intake log. Id. 40-52, Ex. 15, Morrissey Dep. 64-70.

Another meeting was held on April 25, 2003, at which time Plaintiff was given a written reprimand for the following conduct: making threatening and disrespectful comments to callers/clients; failing to timely process a high risk intake; violating rules/laws regarding data privacy; and pursuing actions outside the course and scope of Plaintiff's position without supervisor support or approval. Id., Ex. 18. At this meeting, Plaintiff was also asked where she was on February 28, 2003, to which she replied that she had been in the office.  Plaintiff was placed on unpaid administrative leave for five days, starting April 25, 2003 based on the misconduct listed in the April 16 and 25, 2003 memoranda. Id.

On the morning she was to return to work, May 2, 2003, Plaintiff was informed that she was being place on administrative leave again.  Ayling Affidavit II, Ex. 7, Proskin Dep. 93-96.  Then, on May 6, 2003, Plaintiff met with Duerr, Morrissey, Proskin and Leann Creger.  At this meeting, management explained to Plaintiff that they had received a report that Plaintiff was seen at the courthouse on February 28, 2003 by two police officers. Keena Aff., Ex. 28.  Plaintiff was then given a copy of her time sheet showing that she had worked eight hours on February 28, 2003. Id.  She was also shown her scalage card which showed she

had entered her workplace at 8:15 a.m. and again at 11:20 a.m.  Id.  Morrissey then questioned Plaintiff as to where she was on February 28, 2003. Id., Ex. 9, Duerr Dep. at 91. Plaintiff claimed that she had worked the entire day, and that if she had left the building, it had been to run an errand.  Gillette Affidavit, Ex. 14, Peterson Dep. at 99.  A search of Plaintiff's computer established that she had sent an email to her granddaughter at 9:13 a.m. that day, but no other computer activity was detected. Duerr Dep. at 111.

On May 8, 2003, Plaintiff received a letter from Nancy Hobach notifying her of the County's decision to terminate her employment for falsifying her time records on February 28, 2003 and for making untruthful statements when questioned by her supervisors. Keena Aff., Ex. 31.  The letter also notified Plaintiff that a pre-termination hearing would be held on May 13, 2003, and that such meeting was scheduled to give Plaintiff "the opportunity to present information as to why your employment should not be terminated."  Id.

The pre-termination hearing was held on May 13, 2003.  At this meeting was Isaac, Morrissey, Coyne, Kurt Errickson, the Union's business agent, Proskin, Brown, Hohbach and Plaintiff. Gillette Aff., Ex. 11, Hohbach Dep. at 58-59.  After making introductory statements as to the purpose of the meeting, the meeting was turned over to Plaintiff and her representatives to present information on behalf of Plaintiff.  Id. at 62.  Discussion was then had concerning the evidence

supporting the allegation that Plaintiff was at the courthouse on February 28, 2003 and that Coyne informed Plaintiff the officers were willing to testify that she was at the courthouse on the day in question.  Id. at 62-63.  Plaintiff claims that at this meeting, she told Hohbach that Morrissey had previously accused her of being at the courthouse when she was not.  Ayling Aff., Ex. 9, Proskin Dep. at 154, Hohbach Dep. at 66.  Plaintiff also stated that she did not have enough information to refute the claim that she was at the courthouse on February 28, 2003 because she did not have access to her computer. Hohbach Dep. at 70.  The meeting was then put on hold pending an additional search on Plaintiff's computer.  Id.  This search indicated that there had been no internet activity on the computer the morning of February 28, 2003, but that documents were worked on as late as 5:49 p.m.  Brown Dep. at 152; Pearson Dep. at 33.

On May 15, 2003, Plaintiff was notified by letter that she had been terminated from her employment.  Keena Aff., Ex. 33.  The final authority for this decision was Will Volk's, the County's Director of Employer Relations.  Hohbach Dep. at 149.  On May 19, 2003, the Union notified the County that it was filing a three step grievance concerning Plaintiff's termination.  Id., Ex. 34.  A grievance proceeding was thereafter held on June 12, 2003, and was attended by Plaintiff, Errickson, Proskin, Brown, Coyne and Hohbach.  Hohbach Dep. at 93-94.   During this hearing, Errickson and Brown spoke on Plaintiff's behalf.  Hobach Dep. at 98-

106, Keena Aff., Ex. 13, Bates Nos. 501-502.  At some point during this meeting,

Plaintiffs and the Union representatives left the room.  When they returned, they

proposed that the Union would withdraw the grievance, if the County would let

Plaintiff resign in early July to allow her medical coverage for that month.

Hohbach Dep. at 110, and Deposition Ex. 32, Bates No. 502.  The County did not

respond to this proposal at that time.

After the grievance proceeding concluded, the decision was made to deny

the grievance and uphold the termination.  In a letter dated June 13, 2003 to Kurt

Errickson, however, Hohbach indicated that the County was still willing to accept

the resignation proposal if Plaintiff resigned immediately.  Keena Aff., Ex. 36. This

offer was reiterated in a phone call between Hohbach and Errickson on June 16,

2003.  Hohbach Dep. at 113-114 and Deposition Ex. 32, Bates 504. Plaintiff did

not submit her resignation.

Thereafter, on June 19, 2003, the Union held a meeting to vote on whether

or not to arbitrate the decision to deny the grievance.  Ayling Aff., Ex. 18. Thirty-

eight union members attended this meeting, and Plaintiff was given the

opportunity to address the general membership. Id.  Her friends also spoke on her

behalf, and urged the vote for arbitration.  Peterson Dep. at 281.  Brown,

Errickson and Proskin voiced their opposition to arbitration.  Id. at 279.  After

hearing the presentations, the members voted.  The vote was against arbitration,

21 to 16, with one abstention.  Id.

Around the fourth of July 2003, Plaintiff attended a family picnic.  It was at this picnic that Plaintiff was reminded that her nephew's son was born on February 28, 2003, and that she had visited him that morning at Ridges Hospital in Burnsville, Minnesota.   On July 7, 2003, Plaintiff called Errickson to report her recollection of her whereabouts on the morning of February 28, 2003.  Errickson Dep. 103-104.  Errickson then spoke with Hohbach, and informed her that this new information may change the Union's position on arbitration and he proposed a settlement offer.  Hohbach Dep. 118-123, Deposition Ex. 32, Bates Nos. 505-506. Hohbach discussed the matter with the appropriate County personnel, and advised Errickson later that day that the County was not interested in the settlement offer and would arbitrate if necessary.  Id.

Plaintiff had appealed the decision not to arbitrate.  In a memorandum addressed to the Council 14 Appeals Committee, Errickson recommended that Plaintiff's grievance either be arbitrated or sent back to the Local for reconsideration.  Keena Aff., Ex. 45.  The appeals hearing was held on July 22, 2003.  Plaintiff was given the opportunity to speak for twenty minutes and Brown and Proskin again argued against arbitration. Peterson Dep. at 299, 301. The appeal was denied.  Keena Aff., Ex. 51.

Plaintiff thereafter filed this action, alleging that the Defendants deprived her of her constitutional rights in violation of 42 U.S.C. § 1983.  She also alleged a number of state tort law claims.  In response to motions to dismiss filed by the County and the Union, the Court dismissed Plaintiff's substantive due process claim.  Thus, the only remaining § 1983 claims to be considered are those involving claims for denial of procedural due process and deprivation of liberty interest.  The defamation claims against the Union and individual members were dismissed without prejudice, except to the extent a claim was asserted against Gerry Proskin.

Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  Celotex, 477 U.S. at 323.  Summary judgment is only appropriate when "there is no dispute of fact and where there exists only one conclusion."  Crawford v. Runyon, 37  F.3d 1338, 1341  (8th Cir. 1994) (citation omitted).  The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial.

Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir.1995).

**1.**   **Procedural Due Process Claim**[2]

There are two elements to a procedural due process claim.  First, Plaintiff

must show that she was deprived of some "life, liberty or property" interest.

Krentz v. Robertson Fire Protection District, 228 F.3d 897, 902 (8th Cir. 2000).  If

successful, Plaintiff must then show that she was deprived of this interest without

sufficient "process."  Id.  "When a state deprives a public employee of a

contractually-created property right to continued employment, that deprivation

'must be preceded by notice and opportunity for hearing appropriate to the nature

of the case.'"  Id. (citation omitted).  "Due process is a flexible concept that varies

with the particular situation."  Winegar v. Des Moines Independent Community

School Dist., 20 F.3d 895, 900 (8th Cir. 1994).

In this case, the Defendants do not dispute that Plaintiff had a property

interest in her employment with the County.  The Defendants argue, however,

they are entitled to summary judgment on this claim because the process afforded

Plaintiff to protect her property interest in her employment was constitutionally

sufficient.

To determine what process is due, the Court must weigh the following

---

[2]Contrary to Plaintiff's assertions, this Court did not make a prior determination as to the existence of a genuine issue of material fact as to this claim, as its prior rulings addressed only motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) which requires the Court to look only at the allegations in the Complaint.

factors, "the private interests in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination." Cleveland Bd. of Educ. v. Loudermill 470 U.S. 532, 542-543, 105 S.Ct. 1487, 1493-1494 (1985). In the context of public employment, due process requires that prior to termination, "the tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id., 470 U.S. at 546. "[E]xtensive post-termination proceedings may cure inadequate pretermination proceedings." Krentz , 228 F.3d at 902 (citing Loudermill, 470 U.S. at 546-48)).

The record before the Court demonstrates that on May 6, 2003, Plaintiff was given oral notice of the report received by the County from Sgt. Walter that Plaintiff was allegedly seen at the Dakota County Courthouse on February 28, 2003.  At this meeting, Plaintiff was also given the opportunity to provide information as to where she was on February 28, 2003.  Peterson Dep. at 98-104; Keener Aff., Ex. 28.

The record further demonstrates that Plaintiff then received written notice of the charges against her in the form of a letter dated May 8, 2003, in which she was notified that the County was considering termination of her employment for making untruthful statements when questioned on May 6 as to her whereabouts

on February 28, 2003.  Keener Aff., Ex. 31.  This letter specifically laid out the

charges against her, and further provided that another hearing would be held to

give Plaintiff the opportunity to present information on her behalf.  Specifically,

the letter stated:

> Prior to making a decision whether to terminate your employment with
> Dakota County, a meeting will be held to provide you with an opportunity
> to present information why your employment should not be terminated. . .
> .If you elect to attend the meeting you may have a union representative
> present.

Id.

A pre-termination hearing was held on May 13, 2003, and Plaintiff was

given the opportunity to address the charges.  She denied being at the

courthouse, and stated the officers who claimed they saw her at the courthouse

were mistaken, and that she was in the office all day and had cleaned her office in

the morning.  Plaintiff also noted that she did not have enough information with

which to refute the charges, and that she didn't have access to her computer.

Based on her concerns, the County rechecked Plaintiff's computer.  This search

did not yield any information that would place Plaintiff in her office between

10:00 a.m. and 11:00 a.m. on February 28, 2003, however.

Although these undisputed facts establish that prior to her termination,

Plaintiff was given oral and written notice of the charges against her and an

opportunity to respond to these charges on May 13, 2003, Plaintiff nonetheless

argues that she was not afforded sufficient process as she was not given the opportunity to examine evidence, cross-examine witnesses or provide her own witnesses.  Plaintiff argues that this case is analogous to the facts in <u>Winegar</u>, <u>supra</u>.

In <u>Winegar</u>, the court found that where a plaintiff was given pre-deprivation notice and an opportunity to respond, but not a meaningful opportunity to be heard post-deprivation, summary judgment in favor of the defendant must be reversed.  <u>Id.</u> 20 F.3d at 901.  Specifically, the court held that the evidence showed that the plaintiff reasonably believed he could not present witnesses at scheduled meetings.  <u>Id.</u> at 901, n.8.

 This case is distinguishable from <u>Winegar</u> because Plaintiff was afforded a meaningful opportunity to present evidence and/or witnesses on her behalf at the pretermination meeting.  In fact, the May 8, 2003 letter specifically stated that Plaintiff would be given "the opportunity to *present information* why your employment should be not terminated."  Keener Aff., Ex. 31 (emphasis added).

The Court also notes that Plaintiff has not identified what additional evidence or witnesses she would have presented at the May 13, 2003 meeting, but for the fact that she was allegedly prevented from doing so.  <u>See</u>, <u>Coleman v. Reed</u>, 147 F.3d 751, 754 (8th Cir. 1998) (finding plaintiff provided sufficient due process in part because plaintiff failed to identify any information she would have

used in rebuttal if given additional notice.)  Although Plaintiff belatedly explained that she was at the hospital on the day in question visiting her nephew and his new baby, it is undisputed that Plaintiff did not remember this hospital visit until after her termination.

As for the claim that Plaintiff was not allowed to cross examine witnesses, in her deposition, Bridget Brown stated that  in her capacity as Plaintiff's union representative, she did speak with Sgt. Walter.  Brown Dep. at 227-228.  Plaintiff does not dispute this assertion, yet she complains that she should have been present at this interview.  Plaintiff has failed to provide any support for this particular assertion, however.  Plaintiff also complains that she was not allowed to be present when her computer was searched.  Ms. Brown, however, was present during this search and there is no evidence to suggest that the search results were altered in any way.

The Court also finds that Plaintiff has failed to raise a genuine issue of material fact as to the adequacy of the post-termination procedures available to her.  Following her termination, Plaintiff filed a Step Three Grievance, and a grievance proceeding was held on June 12, 2003.  Plaintiff was again given the opportunity at this meeting to present evidence on her behalf, and there is unrefuted evidence in the record to show that Errickson strongly advocated for Plaintiff at this proceeding.  Hohbach Deposition Ex. 32, Bates Nos. 501-502.

Plaintiff then could, and did, seek arbitration.  At the Union meeting at which the membership was to vote on whether or not to arbitrate, the record shows that Plaintiff and her supporters were given the opportunity to address the membership, but the resulting vote was not in her favor.[3]

Plaintiff further claims that she was denied due process because her supervisors, accusers, and Union representatives were biased and prejudiced against her.  Plaintiff argues that due process requires that she be allowed a hearing before an impartial board.  <u>Riggins v. Board of Regents of University of Nebraska</u>, 790 F.2d 707, 712 (8th Cir. 1986).

In this case, it is undisputed that the decision to terminate Plaintiff's employment was made by Will Volk, after conferring with Ms. Hohbach.  Plaintiff does not allege that either of these individuals was biased or prejudiced against her.  Thus, even if the Court were to find genuine issues of material fact that the individual defendants were biased and prejudiced, Defendants are still entitled to summary judgment as to Plaintiff's procedural due process claim as there is no claim that the decision makers were anything but neutral.

---

[3]The Defendants also argue that after the grievance procedure, Plaintiff also had available to her judicial review by writ of certiorari to the Minnesota Court of Appeals and because Plaintiff did not avail herself of this remedy, she has waived her procedural due process claim.  In <u>Charchenko v. City of Stillwater</u>, the Eighth Circuit recognized that available state administrative remedies did not bar a § 1983 claim. 47 F.3d 981, 984 (8th Cir. 1995)(citing <u>Loudermill</u>, 470 U.S. at 559).  This Court thus finds that Plaintiff did not waive her procedural due process claim by not filing a writ of certiorari to the Minnesota Court of Appeals.

2.      **Liberty Interest**

An employee's liberty interests are implicated when the employer levels accusations at the employee that are so damaging as to make it difficult or impossible to escape the stigma of those charges.  Winegar, 20 F.3d at 899.  "The requisite stigma has generally been found when an employer has accused an employee of dishonesty, immorality, criminality, racism and the like."  Id.

In this case, Plaintiff was accused of dishonesty, lying about her whereabouts on February 28, 2003, violating County policy and procedures and for falsifying government documents, i.e. her timecard.

The Eighth Circuit has held that Loudermill applies equally to liberty interests and property interests.  Schleck v. Ramsey County, 939 F.2d 638, 642-643 (8th Cir. 1991);  Wallin v. Minnesota Dept. of Corrections, 974 F.Supp. 1234, 1239 (D. Minn. 1997) aff'd 153 F.3d 681 (8th Cir. 1998) cert. denied, 526 U.S. 1004 (1999) (applying Schleck to plaintiff's liberty interest claim).  As the Court has already determined that Plaintiff was provided constitutionally sufficient procedural due process, her liberty interests were constitutionally protected as well.

3.      **Defamation**

To establish a defamation claim, Plaintiff must show that a defendant made a false statement about her in an unprivileged publication to a third party that

17

harmed the plaintiff's reputation in the community.   <u>Britton v. Keop</u>, 470 N.W.2d 518, 520 (Minn. 1991).  Further, if the plaintiff is a public official, such plaintiff must also show that the defendant acted with actual malice.  <u>Id.</u>  The Defendants argue that as a county social worker, Plaintiff was a public official.

In <u>Britton</u>, the Minnesota Supreme Court established three criteria for determining whether someone is a public official in the context of a defamation claim: whether the plaintiff performs governmental duties directly related to the public interest; holding a position to influence significantly the resolution of public issue; and whether plaintiff has or appears to have substantial responsibility for or control over the conduct of governmental affairs.  <u>Id.</u> 470 N.W.2d at 522.  The most relevant inquiry is whether the employee is able to assert the authority of government while performing her duties.  <u>Id.</u>   Applying this criteria, the Court found that a probation officer should be deemed a public official.  <u>Id.</u>

Although no Minnesota court has, to date, determined that a social worker is a public official, other jurisdictions have found that  social workers are public officials given the impact their duties have on the public.  <u>See</u>, <u>eg.</u>, <u>Press, Inc. v. Verran</u>, 569 S.W.2d 435, 441 (Tenn. 1978)(junior social worker who removed children from their parents' home was a public official); <u>Kahn v. Bower</u>, 284 Cal. Rptr. 244, 252 (Cal. Ct. App. 1991)(child welfare worker); <u>Villarreal v. Harte-Hanks Communications, Inc.</u>, 787 S.W.2d 131, 134-135 (Tex. Ct. App. 1990)(child

protective services specialist).  An important factor in making this determination should be whether the position:

> carries with it duties and responsibilities affecting the lives, liberty, money or property of a citizen or that may enhance or disrupt his enjoyment of life, his peace and tranquility, or that of his family, is a public official within the meaning of the constitutional privilege.

Britton, 470 N.W.2d at 523 (quoting Press, Inc., 569 S.W2d at 441.)

In this case, Plaintiff's position included duties and responsibilities that could affect or disrupt the lives of a Dakota County resident.  Plaintiff's duties as an intake worker included taking calls concerning possible physical or mental abuse of minors. After receiving such a report, Plaintiff was required to make a determination as to whether the report met the state and county definition of maltreatment and whether the report constituted an emergency.  At her deposition, Plaintiff agreed that the way she responded to these calls had a significant bearing on the affected people's lives, and could actually prevent catastrophes.  Peterson Dep. at 191, 197.

Accordingly, the Court finds that for purposes of her defamation claims against the Defendants, Plaintiff was a public official and must show that the Defendants acted with actual malice when they allegedly defamed her. To show actual malice, Plaintiff must show that the Defendants acted with the knowledge that the statements were false or with reckless disregard for the truth.  Britton, 470 N.W.2d at 524.

The alleged defamatory statements made by various County employees concern Plaintiff's work performance, such as Plaintiff is untrustworthy, a liar and incompetent, and that she falsified her timecard on February 28, 2003.  For example, Plaintiff claimed in her deposition that Isaac told Plaintiff she was incompetent at a meeting attended by Plaintiff, Proskin and Morrissey.  Peterson Dep. at 169.  Coyne also is alleged to have stated during the pre-termination hearing that Plaintiff had a history of lying and was untrustworthy.  Id. at 368. Plaintiff further claims that Duerr defamed her by telling Brown that Plaintiff was involved in a lawsuit with Sgt. Walter.  Id. at 375.  Morrissey is alleged to have defamed Plaintiff by calling her a liar in two written memoranda dated April 16 and April 25, 2003.  Petersen Dep. Exs. 9 and 10.

Plaintiff has not shown that genuine issues of material fact establish that the alleged statements were made with the knowledge such statements were false or with reckless disregard for truth.  The record shows that at the time the alleged statements were made, the County had conducted a thorough investigation to determine whether Plaintiff was at the courthouse on the day in question.  It wasn't until after her termination that Plaintiff offered any evidence that she was in fact at the hospital visiting her nephew, his wife and new baby.  In addition, the record demonstrates that Plaintiff had been disciplined in the past on more than one occasion.  While Plaintiff claims she was an exemplary employee, her

personnel record indicates otherwise.

With regard to Proskin, Plaintiff alleges he stated that Plaintiff wore bedroom slippers to work, was a bad employee, untrustworthy, a liar, and that she had big secrets in her employment history.  Id. ¶ 69.  Again, given Plaintiff's disciplinary record, Plaintiff has failed to show genuine issues of material fact that any statements Proskin made with regard to her job performance were false or made with reckless disregard for the truth.  With respect to the comment that Plaintiff wore bedroom slippers to work, Plaintiff indicated at her deposition that Proskin told Plaintiff that Coyne had told him that she wore bedroom slippers to work.  Peterson Dep. at 332.  Plaintiff further stated that "there's been bedroom slipper talk from a number of people."  Id. at 333.  As the record indicates that Coyne and others were involved with "bedroom slipper talk", Plaintiff has failed to raise a genuine issue of fact that Proskin repeated such "talk" with reckless disregard for the truth.

Based on the above, the Court finds that Defendants are entitled to summary judgment with respect to Plaintiff's defamation claims.


**4.      Tortious Interference with Contract and/or Prospective Economic Relations.**

In Count VI of the Complaint, Plaintiff asserts that the individual Defendants and the Union interfered with her employment contract and

prospective economic relations with the County.

There are five elements to this claim: "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages. The burden of proving sufficient justification for interference is upon the defendant." Furlev Sales and Associates, Inc. v. North American Automotive Warehouse, Inc. 325 N.W.2d 20, 25 (Minn. 1982) (citing, Stephenson v. Plastics Corp. of America, 276 Minn. 400, 416, 150 N.W.2d 668, 679 (1967)).

The individual defendants are all employees of the County.  Since the contract at issue is with the County, and a party cannot interfere with its own contract, Plaintiff must show that the individual defendants acted outside the scope of their duties.  Nordling v. Northern States Power Company, 478 N.W.2d 498, 506 (Minn. 1991).

The conduct that forms the basis of this claim concerns the individual defendants' conduct with respect to the charge that Plaintiff was allegedly at the courthouse during working hours without a supervisor's permission, the investigation into this charge, and the eventual disciplinary process.  The County defendants, Isaac, Morrissey, Duerr and Coyne were all supervisors, and in that capacity, there is no question that their duties included investigation and discipline.  With respect to Union defendants Brown and Proskin, although not

22

Plaintiff's supervisors, there is no dispute that these defendants participated in the investigation and disciplinary process as Plaintiff's union representatives.

As the Minnesota Supreme Court recognized, however, "[i]t is not always easy to determine when [an alleged wrongdoer's] actions are outside the scope of his [duties], i.e. when he is engaged in a personal vendetta or excursion." Nordling, 478 N.W.2d at 506.  The Court thus looked to whether the defendant was justified in terminating the plaintiff's employment, and held that a supervisor is privileged to interfere with an employment contract if such supervisor "acts in good faith, whether competently or not".  Id.   "This privilege is lost, however, if the defendant's actions are predominantly motivated by malice and bad faith, that is, by personal ill-will, spite, hostility, or a deliberate intent to harm the plaintiff employee."  Id.

In this case, there is no dispute that Sgt. Walter informed the County through Duerr that he had seen Plaintiff at the courthouse on February 28, 2003, that Plaintiff did not have permission to be at the courthouse on that date, and further investigation did not reveal any evidence to the contrary.  It is also undisputed that prior to her termination, Plaintiff did not present any evidence to refute Sgt. Walter's charge, nor was there any evidence available to the individual defendants to suggest that she was somewhere other than the courthouse on the date in question.   Although Plaintiff takes issue with any comments or

23

suggestions concerning poor work performance, the record establishes that

Plaintiff was disciplined in the past for a number of reasons - from absenteeism to

interpersonal conflicts with co-workers and the public.  As noted above, there is a

lack of genuine issue of fact that any statements made concerning her work

performance were made with actual malice.  As these statements also form the

basis for the interference claim, the Court finds Plaintiff has failed to show that

the individual defendants were "predominantly motivated by malice and bad

faith."

**5.      Conspiracy**

In Count V of the Complaint, Plaintiff has alleged that the Defendants

conspired to deprive her of her rights, privileges or immunities secured by the

Constitution and laws including her property rights in her employment, her liberty

interest in pursuing a career as a social worker, her substantive due process rights,

her right not to be defamed or slandered, and her right not to have her

employment or prospective economic relations tortiously interfered with.  As the

Court finds that the Defendants are entitled to summary judgment with respect to

the claims underlying the conspiracy, her conspiracy claim must fail as well.


IT IS HEREBY ORDERED that Defendants Dakota County's Motion for

Summary Judgment [Docket No. 65] and the Union's Motion for Summary

Judgment [Docket No. 58] are GRANTED.  Plaintiff's Complaint is hereby

dismissed with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY

Date: March 22, 2006


s / Michael J. Davis
Michael J. Davis
United States District Court